IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02472-KLM

RICHARD E. MARTINEZ,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[1] on the **Social Security Administrative Record** [#11],[2] filed December 19, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq. On February 12, 2015, Plaintiff filed an Opening Brief [#14] (the "Brief"). Defendant filed a Response [#15] (the "Response") in opposition, and Plaintiff filed a Reply [#16]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the

---

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Order of Reference* [#21].

[2] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Commissioner is **REVERSED** and this case is **REMANDED** for further proceedings.

## I.  Factual and Procedural Background

Plaintiff alleges that he became disabled at the age of forty-one on June 1, 2011, due to anxiety, arthritis, hypertension, high blood pressure, paranoia, alcoholism, and left knee problems.  Tr. 119, 144.[3]  On January 26, 2012, Plaintiff protectively filed an application for supplemental security income under Title XVI.  Tr. 140.  On March 28, 2013, a hearing was held before an Administrative Law Judge (the "ALJ").  Tr. 25.  Plaintiff and Dennis Duffin, an impartial vocational expert ("VE"), testified at the hearing.  Tr. 26. On April 25, 2013, the ALJ entered her Decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 23.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 26, 2012 (the date of Plaintiff's application).  Tr. 12.  The ALJ found that Plaintiff suffers from five severe impairments: (1) hypertension, (2) alcohol abuse in remission, (3) major depressive disorder, (4) generalized anxiety disorder, and (5) obesity.[4] Tr. 12.  However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  Tr. 13.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following limitations: (1) "does not require exposure to unprotected heights or hazardous machinery," (2) "does not require more than occasional interaction with

---

[3]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, and 11-8 by the sequential transcript numbers instead of the separate docket numbers.

[4]  Plaintiff concedes that the impairment of "alcohol abuse in remission" is immaterial for resolving Plaintiff's claim.  *Brief* [#14] at 12 n.3.

supervisors, coworkers or the general public," (3) "does not require complex judgment or decision-making;" and (4) "does not require the ability to understand, remember, and carry out complex or detailed instructions such that he needs to perform work which has a Specific Job Preparation (SVP) less than or equal to 3." Tr. 14.  Based on the RFC and the testimony of the VE, the ALJ found that Plaintiff was still able to perform his past relevant work as a "Hog Farm Laborer," and additionally that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] is also able to perform . . . ." Tr. 21.  Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of "Cleaner II," "Industrial Sweeper Cleaner," and "Hand Packager."  Tr. 22.  She therefore found Plaintiff not disabled at step four and, alternatively, at step five of the sequential evaluation. Tr. 347.  The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review.  20 C.F.R. § 416.1481.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last

for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may

have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired,

the agency considers, at step five, whether [he] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.    Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying him disability insurance benefits and supplemental security income. *Brief* [#14] at 11-12. Plaintiff's arguments include the following: (1) the ALJ erred by giving undue weight to the opinion of the State agency psychologist, Mark Berkowitz, Psy.D. ("Dr. Berkowitz"); (2) the ALJ

erred by failing to support the physical RFC finding with substantial evidence; and (3) the ALJ erred by failing to provide proper reasons for rejecting the limitations suggested by William Morton, Psy.D. ("Dr. Morton").  *Id.* at 4.

## A.   The Opinion of Dr. Berkowitz

Dr. Berkowitz is a State agency psychologist who rendered a medical opinion regarding Plaintiff's alleged impairments on May 29, 2012.  Tr. 69. Plaintiff argues that "the ALJ improperly gave significant weight to Dr. Berkowtiz's opinion that plaintiff had no severe mental impairments, in light of the fact that the ALJ's RFC finding belies that opinion."  *Reply* [#16] at 10.  Specifically, Plaintiff states that "[c]ontrary to Dr. Berkowitz's opinions, the ALJ found plaintiff's mental impairments to be severe ([Tr.] 12, finding 2), and found they caused work-related limitations ([Tr.] 14, finding 4).   Thus, the ALJ's finding conflict[s] with [her] assignment of significant weight to Dr. Berkowitz's opinion."  *Brief* [#14] at 28.

Plaintiff misinterprets Dr. Berkowitz's statement that "[the claimant's mental] impairment appears to be not severe."  *See* Tr. 68-69.  Dr. Berkowitz's report addresses steps two and three of the Social Security Administration's five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. § 416.920.  Dr. Berkowitz's above-quoted statement clearly pertains to step three of the evaluation, i.e., whether claimant's medically severe impairments are equivalent to a condition in the Listings.  *See Wall*, 561 F.3d at 1052.  This conclusion is supported earlier in Dr. Berkowitz's report, where his discussion pertains to step two of the evaluation, i.e., whether a claimant has a medically severe impairment or impairments.  *Id.*  At that section of the report, he states that Plaintiff has one or more

medically determinable impairments, provides a list of those impairments (which includes mental impairments), and explicitly states that each of the listed impairments is "[s]evere." Tr. 68-69.

Further, the ALJ clearly understood the appropriate context for Dr. Berkowitz's statement that "[the claimant's mental] impairment appears to be not severe." *See* Tr. 69. In the Decision, the ALJ stated that "the undersigned gives significant weight to Dr. Berkowitz's opinion. Accordingly, the undersigned finds that the claimant does not have a mental impairment or combination of mental impairments of Listing-level severity." Tr. 14. Although Dr. Berkowitz found that Plaintiff had severe medically determinable impairments at step two, he further found that Plaintiff's impairments were not of Listing-level severity at step three. Tr. 68-69. The Court therefore finds no merit in Plaintiff's argument that "Dr. Berkowitz [opined] that [P]laintiff had no severe mental impairments." *Reply* [#16] at 10. Thus, Plaintiff's argument that the "ALJ's own findings totally contradict" Dr. Berkowitz's opinion is also without merit.

Accordingly, the Court finds that the ALJ did not commit reversible error with respect to this issue.

**B.    The RFC Determination Regarding Physical Impairments**

In stating Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work as defined in 20 C.F.R. § 416.967(c), with an additional requirement that Plaintiff not be exposed to unprotected heights or hazardous machinery. Tr. 14. Plaintiff argues that this finding is not supported by substantial evidence. *Brief* [#14] at 20-22; *Reply* [#16] at 11-13.

"Medium work" is defined as work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §

416.967(c). Plaintiff argues that these limitations, along with the limitation that Plaintiff not be exposed to unprotected heights or hazardous machinery, are supported only by the State agency's Single Decision Maker's ("SDM") report. *Reply* [#16] at 13. The ALJ referenced the SDM's report in the Decision as follows:

> The State agency Single Decision Maker (SDM) assessed the claimant as able to perform medium exertional work. Since the SDM is not a physician or psychologist, the document is entitled to no weight as an expert medical opinion, nor does it constitute evidence from "other non-medical sources" . . . . Nevertheless, the undersigned notes that the [RFC] assessment of the SDM is supported by and consistent with the record as a whole.

Tr. 20 (internal citations omitted). Plaintiff essentially asks the Court to find that the ALJ lied about giving the SDM's report no weight. *See Brief* [#14] at 31 ("[The ALJ's' statement, plus the fact that the RFC is physically identical to the SDM's opinion, and the fact that the record contains no other opinion of physical restrictions, certainly suggests that the ALJ's RFC finding was based on the SDM's opinion.").

The Court finds no merit to this argument for two reasons. First, the ALJ's RFC finding and the SDM's report are not, in fact, identical with respect to physical limitations. Both the SDM and the ALJ found that Plaintiff could perform medium work, was limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently. Tr. 14, 71, 73. However, the SDM found additional limitations not embraced by the ALJ, including that Plaintiff was limited to standing or walking only six hours in an eight-hour work day, that Plaintiff was limited to sitting only six hours in an eight-hour work day, and that Plaintiff should be limited to climbing ladders, ropes, and scaffolds no more than "frequently." Tr. 71. These differences demonstrate that the ALJ's RFC assessment was not identical to the SDM's assessment.

Second, the Court notes that the ALJ essentially gave Plaintiff the benefit of the

doubt by placing greater limitations on him than are present in the record.  For example,

the ALJ gave great weight to the July 19, 2012 opinion of Heather Abrahamson, D.O. ("Dr.

Abrahamson").  Tr. 19.  The ALJ noted that:

> Dr. Abrahamson expressed the opinion that the claimant's condition did not,
> in any way, limit his ability to lift and/or carry, to sit, or to stand/walk.
> Objective medical signs and findings, as well as Dr. Abrahamson's personal
> observations of the claimant's presentation support Dr. Abrahamson's
> opinion.  Dr. Abrahamson's opinion is not inconsistent with other substantial
> evidence of record.  Therefore, the undersigned gives great weight to Dr.
> Abrahamson's opinion as expressed on July 19, 2012.

Tr. 19 (citing Tr. 302-04).  Plaintiff does not argue that the ALJ erred by relying on the no-

limitations assessment by Dr. Abrahamson.  Further, Plaintiff does not argue that the ALJ

erred by failing to rely on other substantial evidence in the record indicating a greater level

of limitation than that suggested by Dr. Abrahamson.

Accordingly, given the disparity between the ALJ's RFC assessment and the SDM's

report, and the ALJ's explicit reliance on Dr. Abrahamson's July 19, 2012 opinion, the Court

finds that the ALJ did not commit reversible error with respect to this issue.

## C.    The Opinion of Dr. Morton

The ALJ gave "some weight" to the opinion of Dr. Morton, who conducted a

consultative psychological examination of Plaintiff on May 15, 2012.  Tr. 17-18.  Plaintiff

concedes that the ALJ took into account some of the limitations suggested by Dr. Morton

but argues that the ALJ did not have valid reasons for rejecting some of Dr. Morton's other

suggested limitations.  *Brief* [#14] at 16.

In the Decision, the ALJ summarized Dr. Morton's May 15, 2012 opinion as follows:

> The claimant reported [to Dr. Morton] that he currently lived with his parents.
> He stated that he was able to drive.  He indicated that he required no
> assistance in regard to obtaining medical care or taking medications.  [T]he
> claimant reported that he got very little exercise.  He said that he slept

approximately six hours per 24-hour day. He stated that he was not accident prone. He related that the most complex food he was able to prepare by himself was microwavable food. The claimant stated that he was . . . able to participate in straightening up the home, to participate in outside work, and to participate in laundry care. He indicated he was able to attend to his self-care independently. He said that he was not able to adequately manage finances without the assistance of others. He explained that he was not able to control impulses related to spending money. In general, his overall level of independent functioning was adequate aside from money management. Based on the clinical interview and formal mental status examination, Dr. Morton diagnosed polysubstance dependence; major depressive disorder, moderate; social phobia; and panic disorder without agoraphobia. According to the <u>Diagnostic and Statistical Manual of Mental Disorders Fourth Edition – TR, 2000</u>, this indicates that the claimant had serious symptoms or any serious impairment in social, occupational, or school functioning. Dr. Morton expressed the opinion that [the claimant] had moderate mental limitations in regard to remembering and understanding instructions, procedures, and locations; to maintaining attention, concentration, and pace; to interacting appropriately with supervisors, coworkers, and the public; and to using good judgment and responding appropriately to changes in the work place. Dr. Morton indicated there were mild mental limitations in regard to carrying out instructions. As previously noted, the claimant testified that he was not in mental health treatment at the time of Dr. Morton's evaluation. He also testified that he had been in mental health treatment for six months, he is slowly making progress, and he is getting better around people. Therefore, the undersigned gives some weight to Dr. Morton's opinion, as it relates to the period prior to the time the claimant began mental health treatment.

Tr. 17-18.

The ALJ placed the following mental limitations on Plaintiff's RFC: (1) "does not require more than occasional interaction with supervisors, coworkers or the general public," (2) "does not require complex judgement or decision-making;" and (3) "does not require the ability to understand, remember, and carry out complex or detailed instructions such that he needs to perform work which has a Specific Job Preparation (SVP) less than or equal to 3." Tr. 14. Plaintiff argues that the ALJ failed to provide proper reasons for why she discounted Dr. Morton's suggested limitations regarding Plaintiff's abilities to maintain attention, concentration, and pace and to respond appropriately to changes in a work place.

-11-

*Reply* [#16] at 6.

The plaintiff in *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), made a similar

argument to the one Plaintiff makes here.  In *Haga*:

> Appellant argues that the ALJ's RFC determination reflects restrictions
> consistent with the three impairments Dr. Rawlings marked on his form
> concerning understanding, remembering, and carrying out detailed
> instructions and dealing with the public, but inexplicably rejects the other four
> restrictions concerning appellant's ability to deal appropriately with
> supervisors and coworkers and respond appropriately to workplace
> pressures and changes.  Appellant argues that the case should be remanded
> because the ALJ failed to explain why he rejected some of Dr. Rawlings'
> restrictions while seemingly adopting others. . . . [T]he evidence on which the
> ALJ explicitly relied in his decision does not imply an explanation for rejecting
> any of Dr. Rawlings' restrictions on the mental RFC form, and, in fact, the
> ALJ never stated that he rejected Dr. Rawlings' opinion.  We therefore agree
> that the ALJ should have explained why he rejected four of the moderate
> restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the
> others.  An ALJ is not entitled to pick and choose through an uncontradicted
> medical opinion, taking only the parts that are favorable to a finding of
> nondisability. . . .  So it is simply unexplained why the ALJ adopted some of
> Dr. Rawlings' restrictions but not others.  We therefore remand so that the
> ALJ can explain the evidentiary support for his RFC determination.

482 F.3d at 1207-08 (internal citations omitted).

Here, the ALJ gave Dr. Morton's opinion "some weight" to the extent it "relates to the

period prior to the time the claimant began mental health treatment."  Tr. 18.  This period

would be approximately January 26, 2012, through July 2012.  *See* Tr. 12, 18.  However,

a number of issues are unclear regarding the ALJ's use of Dr. Morton's opinion.  For

example, it is unclear whether the ALJ gave Dr. Morton's opinion any weight for the period

after Plaintiff began mental health treatment.  It is also unclear whether the RFC pertained

to Plaintiff for the period prior to beginning mental health treatment, or after.  Further, it is

unclear to what extent the "some weight" given to Dr. Morton's opinion ultimately impacted

the RFC.  Finally, it is unclear why some of the limitations suggested by Dr. Morton were

included in the RFC and why others were not.  In short, the Court has been unable to follow the ALJ's reasoning regarding Dr. Morton's opinion and the ALJ's RFC assessment. Although the Court does not insist on "technical perfection" in the ALJ's Decision, the Court must be able to follow the ALJ's reasoning.  *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).  In light of *Haga*, the Court must remand this matter to the ALJ for further explanation of her use of Dr. Morton's opinion and how she reached the mental limitations placed on Plaintiff's RFC.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this opinion.[5]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).  *See Knuutila v. Colvin*, —— F. Supp. 3d ——, ——, 2015 WL 5116723, at *5 (D. Colo. Aug. 31, 2015).

Dated:  March 14, 2016                              BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[5]  The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits.  *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).  By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled.  *See, e.g., Knuutila v. Colvin*, —— F. Supp. 3d ——, ——, 2015 WL 5116723, at *5 n.5 (D. Colo. Aug. 31, 2015).